UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| GREGORY BELOTE, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | )    Case No. CIV-17-402-CG |
| | ) |
| NANCY A. BERRYHILL, Acting | ) |
| Commissioner of Social Security, | ) |
| | ) |
|     Defendant. | ) |

## OPINION AND ORDER

Plaintiff Gregory Belote brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying Plaintiff's application for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-434. The parties have consented to the jurisdiction of a United States Magistrate Judge. Upon review of the administrative record (Doc. No. 8, hereinafter "R. _"),[1] and the arguments and authorities submitted by the parties, the Court affirms the Commissioner's decision.

PROCEDURAL HISTORY AND ADMINISTRATIVE DECISION

Plaintiff protectively filed his DIB application on September 23, 2013, alleging a disability onset date of December 23, 2012. R. 10, 203-08. Following denial of his application initially and on reconsideration, a hearing was held before an Administrative Law Judge ("ALJ") on August 11, 2015. R. 10, 30-92, 120-23, 125-27. In addition to

---

[1] With the exception of the administrative record, references to the parties' filings use the page numbers assigned by the Court's electronic filing system.

Plaintiff, a vocational expert ("VE") testified at the hearing. R. 10, 81-91. The ALJ issued an unfavorable decision on September 21, 2015. R. 7-29.

As relevant here, the Commissioner uses a five-step sequential evaluation process to determine entitlement to disability benefits. *See Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009); 20 C.F.R. § 404.1520. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity during the period from his alleged onset date of December 23, 2012, through his date last insured of December 31, 2014. R. 12. At step two, the ALJ determined that Plaintiff had the severe impairments of bipolar disorder, anxiety, and depression. R. 12. At step three, the ALJ found that, through the date last insured, Plaintiff's condition did not meet or equal any of the presumptively disabling impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. R. 12-14.

The ALJ next assessed Plaintiff's residual functional capacity ("RFC") based on all of his medically determinable impairments. R. 14-23. The ALJ found that, through the date last insured, Plaintiff had the RFC to perform a full range of work at all exertional levels, with the following nonexertional limitations:

> The claimant's work must be limited to simple, routine, and repetitive tasks. The claimant can have occasional interaction with co-workers and supervisors and only superficial and no direct interaction with the public; and free of production rate assembly line pace.

R. 14. At step four, the ALJ found that Plaintiff was unable to perform his past relevant work through the date last insured. R. 23.

At step five, the ALJ considered whether, through the date last insured, there were jobs existing in significant numbers in the national economy that Plaintiff—in view of his

age, education, work experience, and RFC—could perform. R. 24-25. Relying upon the VE's testimony regarding the degree of erosion to the unskilled occupational base caused by Plaintiff's additional limitations, the ALJ concluded that, through the date last insured, Plaintiff could have performed medium, unskilled occupations such as dining-room attendant, hospital cleaner, or automobile detailer, and that such occupations offered jobs that existed in significant numbers in the national economy. R. 24. Therefore, the ALJ concluded that Plaintiff had not been disabled within the meaning of the Social Security Act during the relevant time period. R. 25.

Plaintiff's request for review by the SSA Appeals Council was denied, and the unfavorable determination of the ALJ stands as the Commissioner's final decision. *See* R. 1-4; 20 C.F.R. § 404.981.

STANDARD OF REVIEW

Judicial review of the Commissioner's final decision is limited to determining whether factual findings are supported by substantial evidence in the record as a whole and whether correct legal standards were applied. *Poppa v. Astrue*, 569 F.3d 1167, 1169 (10th Cir. 2009). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003) (internal quotation marks omitted). "A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Branum v. Barnhart*, 385 F.3d 1268, 1270 (10th Cir. 2004) (internal quotation marks omitted). The court "meticulously examine[s] the record as a whole," including any evidence "that may undercut or detract from the ALJ's findings,"

"to determine if the substantiality test has been met." *Wall*, 561 F.3d at 1052 (internal quotation marks omitted). While a reviewing court considers whether the Commissioner followed applicable rules of law in weighing particular types of evidence in disability cases, the court does not reweigh the evidence or substitute its own judgment for that of the Commissioner. *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008).

ANALYSIS

In his request for judicial review, Plaintiff raises three claims of error: (1) the ALJ improperly evaluated a treating-source opinion; (2) the RFC and corresponding VE hypothetical failed to account for certain functional limitations supported by the record; and (3) the ALJ failed to consider Plaintiff's Attention Deficit Disorder or the cumulative effect of Plaintiff's impairments. *See* Pl.'s Br. (Doc. No. 12) at 2-13.

I. THE ALJ'S ASSESSMENT OF DR. BUFFINGTON'S MEDICAL OPINION

The record reflects that Plaintiff received medical treatment from both his primary care physician, Bill Buffington, MD, and his treating psychiatrist, Shawn Khavari, MD, during the relevant period between December 23, 2012, and December 31, 2014. *See* R. 315-75, 377-454, 455-61, 462-88. Plaintiff asserts that the ALJ erred by failing to assess Dr. Buffington's opinion in accordance with the "treating-physician rule." *See* Pl.'s Br. at 2-9.

*A. The Treating-Physician Rule*

By regulation, a treating source's medical opinion generally is given "more weight" than that of a nontreating source. 20 C.F.R. § 404.1527(a)(2), (c)(2); *Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004). Under Tenth Circuit authority, the evaluation of a

treating physician's opinion follows a two-step procedure. *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003). First, the ALJ must determine whether the treating physician's opinion should be given "controlling weight" on the matter to which it relates. *See id.*; 20 C.F.R. § 404.1527(c)(2). The medical opinion of a treating physician must be given controlling weight if it is both "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence" in the record. 20 C.F.R. § 404.1527(c)(2); *see Watkins*, 350 F.3d at 1300 (applying SSR 96-2p, 1996 WL 374188, at *2 (July 2, 1996)).[2] Second, if the ALJ has determined that the medical opinion of a treating physician is not entitled to controlling weight, the ALJ must determine what lesser weight should be afforded the opinion. *See Watkins*, 350 F.3d at 1300-01; *Langley*, 373 F.3d at 1119. The determination of how much deference to afford a treating-physician opinion not entitled to controlling weight should be made in view of a prescribed set of regulatory factors:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Watkins*, 350 F.3d at 1301 (internal quotation marks omitted); *see* 20 C.F.R. § 404.1527(c)(2)(i)-(ii), (c)(3)-(6).

---

[2] Social Security Ruling 96-2p has been rescinded for claims filed on or after March 27, 2017. *See* Rescission of Social Security Rulings 96-2p, 96-5p, and 06-3p, 82 Fed. Reg. 15263-01 (Mar. 27, 2017).

5

The ALJ's decision "'must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" *Watkins*, 350 F.3d at 1300 (quoting SSR 96-2p, 1996 WL 374188, at *5).

*B. The Medical Record and the Written Decision*

The medical evidence of record reflects that Plaintiff visited Dr. Buffington for examination both during and after the relevant disability period. *See* R. 377-454, 462-74. On August 16, 2015, Dr. Buffington completed a Psychiatric Review Technique Form ("PRTF") regarding whether Plaintiff met the requirements for disability between October 2013 and August 2015. R. 475-88 (Ex. 6F). Dr. Buffington's PRTF findings included that Plaintiff met Listings 12.04 and 12.06 for affective and anxiety-related disorders, including depressive syndrome, generalized persistent anxiety, and recurrent severe panic attacks. R. 475, 478, 480. Dr. Buffington also stated that Plaintiff's functional limitations included marked restriction of activities of daily living, marked difficulties in maintaining concentration, persistence, or pace, and mild difficulties in maintaining social functioning. R. 485.

In the written decision, the ALJ discussed Dr. Buffington's treatment records. *See* R. 17, 19-21 (citing Ex. 3F (R. 377-454), Ex. 5F (R. 462-74), Ex. 6F (475-88)). The ALJ also addressed Dr. Buffington's PRTF, stating:

> The Administrative Law Judge considered and gave minimal weight to the Psychiatric Review Technique Form by the claimant's primary care physician at Exhibit 6F, in that he gave the claimant marked limitations in several areas. Dr. Buffington assessed that the claimant's mental impairments meet Listings 12.04 and 12.06. These limitations and

6

assessments are not consistent with the claimant's other mental health records including his own treating notes [(]at Exhibits 3F and 5F). This Psychiatric Review Technique Form is not consistent with the claimant's reported activities and abilities. Dr. Buffington saw the claimant regularly mainly for medication refills. Dr. Buffington's own treating notes showed that the claimant was alert, oriented to person, place and time. The claimant had anxious mood, but his affect was appropriate and cooperative. Dr. Buffington's notes on January 20, 2014, that the claimant was negative for anxiety, depression, and sleep disturbance, which is inconsistent with the Psychiatric Review Technique Form at Exhibit 6F. While treating source opinions may be entitled to controlling weight on issues of the nature and severity of an individual's impairments, the ultimate decision-making authority regarding the issue of disability rests with the Commissioner. Treating source opinions on issues reserved to the Commissioner are never entitled to controlling weight or special significance (Social Security Ruling 96-5p).

R. 23.[3]

### *C. Discussion*

Plaintiff challenges the ALJ's application of both the first and second prongs of the treating-physician rule to Dr. Buffington's medical opinion. *See* Pl.'s Br. at 2-9. As noted, the first prong of the treating-physician rule requires the ALJ to assign the treating physician's opinion controlling weight if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2). Plaintiff argues that the ALJ erred at this juncture by failing to address whether Dr. Buffington's opinion was well supported prior to addressing whether it was inconsistent with other substantial evidence. Yet, the rule clearly provides that the obligation to assign controlling weight is

---

[3] Social Security Ruling 96-5p has been rescinded for claims filed on or after March 27, 2017. *See* Rescission of Social Security Rulings 96-2p, 96-5p, and 06-3p, 82 Fed. Reg. 15263-01 (Mar. 27, 2017).

7

not triggered unless both components are met. Where, as here, the ALJ determined that the "consistency" component was not satisfied, he was under no obligation to provide further analysis before proceeding to the second prong of the test. *See Watkins*, 350 F.3d at 1300 ("[I]f the opinion is deficient in either of these respects, then it is not entitled to controlling weight."); R. 23 (ALJ stating that Dr. Buffington's opinion was "not consistent" with Plaintiff's other records, including the physician's own treating notes, or with Plaintiff's "reported activities and abilities").

Plaintiff's arguments regarding the ALJ's application of the second prong of the treating-physician rule are similarly without merit. First, Plaintiff suggests that the ALJ erred by failing to review all six factors set forth in 20 C.F.R. § 404.1527(c) when determining the level of deference to afford Dr. Buffington's opinion. *See* Pl.'s Br. at 4-5. Contrary to Plaintiff's argument, "[t]he ALJ is not required to mechanically apply all of [the regulatory] factors in a given case." *Ringgold v. Colvin*, 644 F. App'x 841, 843 (10th Cir. 2016); *see also Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007) ("That the ALJ did not explicitly discuss all the § 404.1527[(c)] factors for each of the medical opinions before him does not prevent this court from according his decision meaningful review. [The claimant] cites no law, and we have found none, requiring an ALJ's decision to apply expressly each of the six relevant factors in deciding what weight to give a medical opinion.").

Plaintiff also finds fault in the ALJ's proffered reasons for his assignment of only "minimal weight" to Dr. Buffington's PRTF. *See* Pl.'s Br. at 4-9. According to Plaintiff, the ALJ's "reasons were neither 'legitimate' (except one), nor 'good,' as the law requires."

8

*Id.* at 5; *see* 20 C.F.R. § 404.1527(c)(2).  The Court disagrees for the reasons outlined below.

First, the ALJ refers to Dr. Buffington as Plaintiff's "primary care physician," which implicates the 20 C.F.R. § 404.1527(c)(5) factor regarding specialization.  R. 23.  This factor provides that a medical opinion of a source who is not a specialist in the relevant area generally receives less weight than the medical opinion of a specialist.  *See* 20 C.F.R. § 404.1527(c)(5).

Second, the ALJ expressly identified several inconsistencies between Dr. Buffington's PRTF findings and his own treatment notes.  R. 23.  The ALJ noted, for instance, that Dr. Buffington's PRTF findings—which included marked difficulties in maintaining concentration, persistence, or pace and mild difficulties in maintaining social functioning—conflict with his treatment notes, which at times describe Plaintiff as "alert, oriented to person, place and time," and "appropriate, cooperative" in mood.  *Compare* R. 380, 384, 388, 391, 394, 397, 400, 403, 406, 408, 412, 416, 419, 422, 426, 429, 436, 440, 465, 469, 473, *with* R. 485.  In Plaintiff's view, being alert, oriented, and cooperative has "nothing to do with whether a person is depressed," Pl.'s Br. at 6, but he cites no support for this view, and the Tenth Circuit has held to the contrary.  *See Fulton v. Colvin*, 631 F. App'x 498, 503-04, 504 n.8 (10th Cir. 2015) (upholding ALJ's assignment of little weight to medical opinion identifying "marked restrictions in daily living activities, social functioning, and concentration" based, in part, on its inconsistency with treatment notes identifying the claimant as fully oriented, alert, and cooperative).

Third, and most significantly, the ALJ correctly noted that the PRTF findings were inconsistent with other mental health records, such as the treatment notes of psychiatrist Dr. Khavari, which state that Plaintiff's "[c]oncentration has been fair with [A]dderall," that Plaintiff "[i]s able to focus," has "goal[-]directed ideas," is "logical [and] coherent," and that Plaintiff's "ability to pay attention" and "distractibility" are average. R. 317-18, 320-21, 323-24, 326-27, 329-30, 332, 334, 336, 338, 341, 343, 345, 347, 349, 351, 353, 355, 357, 455-58, 460. The PRTF findings were also inconsistent with the assessments of the state-agency psychological consultants, who both found only moderate restrictions of activities of daily living and moderate difficulties maintaining social functioning and concentration, persistence, or pace. R. 23, 98, 111; *see* 20 C.F.R. § 404.1527(c)(3) ("The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that medical opinion."), .1527(c)(4) ("Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that medical opinion.").

The ALJ's decision adequately and properly considered the pertinent factors, gave "good reasons" "for the weight [she] ultimately assign[ed] the opinion," and was "'sufficiently specific to make clear to any subsequent reviewers the weight the [ALJ] gave to the treating source's medical opinion and the reasons for that weight.'" *Id.* § 404.1527(c)(2); *Watkins*, 350 F.3d at 1300 (quoting SSR 96-2p, 1996 WL 374188, at *5), 1301. Plaintiff has not shown that reversal is required based upon any error by the ALJ in assigning weight to Dr. Buffington's PRTF findings pursuant to the treating-physician rule.

## II. THE ALJ'S INCLUSION OF ALL PLAINTIFF'S FUNCTIONAL LIMITATIONS IN THE RFC

Plaintiff next argues that the RFC was deficient because it failed to include a limitation regarding Plaintiff's difficulty "leaving his home." Pl.'s Br. at 9-10. As support, Plaintiff cites his own hearing testimony regarding the effect of his mental impairments on his motivation to leave his house. *See id.* (citing R. 42, 50, 51, 55).

The ALJ determined, however, that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [his] symptoms [were] not entirely credible," and Plaintiff does not challenge this adverse credibility determination. R. 17. Moreover, Plaintiff fails to point to any medical evidence in the record that supports the inclusion of a functional limitation regarding Plaintiff's ability to leave his home. *Maestas v. Colvin*, 618 F. App'x 358, 361 (10th Cir. 2015) ("As part of his burden, [the claimant] must provide evidence of his functional limitations . . . ." (citation omitted)). Plaintiff, therefore, has not shown that the omission of this alleged limitation rendered the RFC unsupported by substantial evidence.

Plaintiff's corollary argument—that a limitation regarding Plaintiff's ability to leave his home should have been included in the ALJ's hypothetical to the VE—is similarly without merit. *See* Pl.'s Br. at 10-11. A hypothetical question posed to the VE is sufficient if "it contain[s] all of the limitations found to exist by the ALJ," so long as the ALJ's finding is supported by substantial evidence in the record. *Barnett v. Apfel*, 231 F.3d 687, 690 (10th Cir. 2000). As discussed above, Plaintiff has not established that the ALJ should have included in her RFC the limitation Plaintiff claims on appeal. Therefore, the ALJ was not required to include this limitation in her hypothetical question to the VE.

III.        THE ALJ'S CONSIDERATION OF PLAINTIFF'S ATTENTION DEFICIT DISORDER

Plaintiff objects that the ALJ failed to consider Plaintiff's Attention Deficit Disorder ("ADD") at step two or when making her RFC determination. *See* Pl.'s Br. at 12-13. As an initial matter, Plaintiff did not allege disability due to ADD in his initial claim; nor did he or his attorney raise the issue of ADD at the hearing other than when Plaintiff stated that he had been diagnosed with ADD at an early age. R. 22, 34, 41, 94, 106; *see Wall*, 561 F.3d at 1062 ("[A]n ALJ is generally entitled to rely on the claimant's counsel to structure and present claimant's case in a way that the claimant's claims are adequately explored." (internal quotation marks omitted)); *Maes v. Astrue*, 522 F.3d 1093, 1097 (10th Cir. 2008) ("As [the claimant] was represented by counsel, the ALJ was entitled to rely on counsel's representation of the claims and records that might be involved . . . .").

To the extent that Plaintiff challenges the ALJ's omission of ADD from Plaintiff's severe impairments at step two, any error would be harmless, as "failure to find a particular impairment severe at step two is not reversible error when the ALJ finds that at least one other impairment is severe," as occurred here. *Allman v. Colvin*, 813 F.3d 1326, 1330 (10th Cir. 2016); *see also Ray v. Colvin*, 657 F. App'x 733, 734 (10th Cir. 2016) (noting that an error in failing "to find an impairment medically determinable" "would be obviated if the ALJ considered the non-medically determinable impairment in assessing the RFC"); R. 12. And Plaintiff's contention that "the ALJ's decision does not indicate that he considered the cumulative effect of [Plaintiff's] impairments," including ADD, at step two is belied by the written decision, in which the ALJ explicitly recognized her obligation to consider Plaintiff's impairments in combination at step two. Pl.'s Br. at 13; R. 11; *cf. Wall*, 561

F.3d at 1070 ("Where, as here, the ALJ indicates he has considered all the evidence our practice is to take the ALJ at his word." (alteration and internal quotation marks omitted)). Plaintiff has not shown reversible error at step two.

Similarly, Plaintiff's argument that the ALJ failed to consider Plaintiff's ADD in her RFC analysis is unavailing, as it is contradicted by the multiple express references to ADD and concentration issues in the ALJ's written decision. *See* R. 15, 17, 18, 19, 20, 21, 22. Plaintiff argues that the RFC limitations do not address all of Plaintiff's ADD-related symptoms, including "difficulty paying attention for the length of time necessary on a job . . . , making errors, forgetting what he is supposed to be doing, getting confused and not paying attention." Pl.'s Br. at 13. As support, Plaintiffs points broadly to Dr. Buffington's diagnosis and treatment of Plaintiff's ADD and suggests that "throughout the hearing, Mr. Belote: evidenced difficulty tracking the questions, made numerous errors in facts, displayed a memory impairment, got confused, and failed to pay close attention." Pl.'s Br. at 12. Plaintiff fails, however, to explain how the RFC—limiting him to "simple, routine, and repetitive tasks" with only "occasional interaction with co-workers and supervisors and only superficial and no direct interaction with the public," "free of production rate assembly line pace"—does not adequately address Plaintiff's difficulties in concentration or tendency to get confused. *See id.*; R. 14. Nor does he identify any additional functional limitations that he believes should have been included in the RFC. *See* Pl.'s Br. at 12; *Hackett v. Barnhart*, 395 F.3d 1168, 1171 (10th Cir. 2005) ("The claimant bears the burden of establishing a prima facie case of disability at steps one through four."); *see also Madrid*

*v. Astrue*, 243 F. App'x 387, 392 (10th Cir. 2007) (noting that the mere "diagnosis of a condition does not establish disability").

Moreover, other evidence of record—including the treatment notes of Dr. Khavari and the assessments of state-agency psychological consultants—support a conclusion that Plaintiff's ADD does not significantly limit his ability to concentrate or function when treated with medication. *See* R. 317-18, 320-21, 323-24, 326-27, 329-30, 332, 334, 336, 338, 341, 343, 345, 347, 349, 351, 353, 355, 357, 455-58, 460 (Dr. Khavari noting that Plaintiff's "[c]oncentration has been fair with Adderall," that his "ability to pay attention" and distractibility were average," and that Plaintiff "[i]s able to focus and complete tasks"; R. 99, 112 (state-agency psychological consultants concluding that, while Plaintiff has been diagnosed with ADD, "he appears to function well with his medications").

Plaintiff thus has not shown that the ALJ's consideration of Plaintiff's ADD at step two or in his RFC determination failed to comply with regulatory directives or was unsupported by substantial evidence.

## CONCLUSION

The decision of the Commissioner is AFFIRMED. Judgment shall issue accordingly.

ENTERED this 16th day of August, 2018.

_____
CHARLES B. GOODWIN
UNITED STATES MAGISTRATE JUDGE